IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CHARLES EVANS, III,

    Plaintiff,

vs.

NEBRASKA BEEF, LTD.,

    Defendant.

8:12CV161

FINDINGS AND RECOMMENDATION

This matter is before the court on the defendant's Motion to Strike and/or Dismiss (Filing No. 21).[1] The defendant filed a brief (Filing No. 22) in support of the motion. The plaintiff filed a brief (Filing No. 23) in opposition. The defendant filed a brief (Filing No. 24) in reply.

## BACKGROUND

On May 9, 2012, Charles Evans, III (Evans), who is proceeding *pro se*, filed this lawsuit against his former employer, Nebraska Beef, Ltd. (Nebraska Beef), seeking relief for alleged violations of state and federal wage-and-hour laws, including alleged failures to pay minimum wage and overtime compensation for job-related activities. **See** Filing No. 1. Evans amended his complaint on July 23, 2012, and again on October 10, 2012. **See** Filing No. 8 - Amended Complaint; Filing No. 11 - Second Amended Complaint. Evans' Second Amended Complaint sets forth the following factual allegations, which the court relies on for the purposes of Nebraska Beef's motion.

Evans was an employee of Nebraska Beef from either August or September of 2008 until October 6, 2011, at Nebraska Beef's Omaha meat processing facility. **See** Filing No. 11 - Second Amended Complaint p. 1, 6. In accordance with Nebraska Beef's policies, Evans was required to wear a uniform and personal protective equipment (PPE). *Id.* at 8. The PPE included "plastic [a]prons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, earplugs, coveralls, eye protection, and other protective equipment

---

[1] Because the defendant's motion combines a motion to strike with a motion to dismiss, the undersigned magistrate judge will enter a findings and recommendation, rather than an order, pursuant to 28 U.S.C. § 636(b).

and coverings." *Id.* Each time Evans left his workstation, such as for lunch or to go on break, he was required to remove his PPE; before he returned, he was required to put it on. *Id.* at 8-9. Nebraska Beef's policy also required him to sanitize his PPE for each break. *Id.* at 9-11.

Nebraska Beef compensated Evans for time spent on an assembly line. *Id.* at 5. This compensated time is referred to as "gang time." *Id.* at 5, 11. Gang time does not include the time spent donning, doffing, and sanitizing PPE. *Id.* Evans asserts these tasks are necessary for the performance of his job, yet he was not compensated for performing them because they occurred outside of gang time. *Id.* at 9. Evans states he was unable to document exactly how much time went unpaid because Nebraska Beef does not use a time clock for gang time employees. *Id.* at 7. Evans estimates he spent "30-40 minutes or more per day performing uncompensated work activities." *Id.* at 3. Evans argues the lack of a time clock, itself, "should trigger [f]ederal investigation/ service herein." *Id.* at 7. As damages, Evans seeks "lost wages, lost overtime wages, statutory penalties, interest costs and attorneys [sic] fees." *Id.* at 15. In addition to his damages, Evans seeks a court order requiring Nebraska Beef to install a time clock. *Id.* at 14.

Evans makes intermittent statements throughout his Second Amended Complaint that form the basis of Nebraska Beef's Motion. Evans states Nebraska Beef's failure to compensate him for unpaid work is part of an ongoing conspiracy. *Id.* at 2. Evans states, as part of Nebraska Beef's operations, Nebraska Beef implemented an "unlawful Labor Racketeering Compensation system" at the Omaha facility where Evans was employed. *Id.* at 4. Accordingly, Evans asks "[t]hat this court direct US attorney for the district of Nebraska to explore and bring RICO Labor Racketeering charges against defendants [sic]." *Id.* at 14.[2] Evans seeks ten million dollars in damages because he suffered "peculiar discrimination" when he was forced to go out through the garage door for his breaks, while everyone else was allowed to use a different door. *Id.* Evans states policies put in place by Nebraska Beef resulted in unpaid work hours affecting him. *Id.* at 8. Evans describes co-workers as "class members" and makes intermittent statements on their behalf throughout his complaint.

---

[2] RICO is an abbreviation for the Racketeer Influenced and Corrupt Organizations Act found at 18 U.S.C. §§ 1960 to 1968. The plaintiff makes a similar reference to RICO in the introduction section of his Second Amended Complaint. See Filing No. 11 – Second Amended Complaint p. 2.

*Id.* at 9, 11.[3]  Evans asks the court to award "plaintiffs" damages to be determined at trial.  *Id.* at 13.  Evans' Second Amended Complaint is handwritten and a number of similar "class members" statements have been crossed out, suggesting Evans attempted to eliminate the class references in his Second Amended Complaint.  *Id.* at 5, 8, 10.  As part of his prayer for damages, Evans includes a phrase asking for "this action to proceed on behalf of the 'POE-Boy.'"  *Id.* at 14.

After Evans amended his complaint (Filing No. 8 - Amended Complaint), on September 6, 2012, the court conducted an initial review.  **See** Filing No. 10 - Sept. 6, 2012, Initial Review.  The court determined Evans' liberally construed allegations asserted a claim for unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., but failed to set forth sufficient facts to support such claim and therefore gave Evans thirty days to amend his complaint.  *Id.* at 3.  The court also found Evans' allegations regarding his forced use of the garage door to be "unrelated and nonsensical" with regard to the FLSA claim.  *Id.* at 3.  On October 10, 2012, Evans' filed the Second Amended Complaint.  **See** Filing No. 11 - Second Amended Complaint.  On December 3, 2012, the court reviewed the Second Amended Complaint and found Evans sufficiently stated a claim upon which relief could be granted concerning his allegations of unpaid wages.  **See** Filing No. 12 - Dec. 3, 2012, Initial Review p. 2.  The court dismissed claims against Tony Joy and Mike Thatcher as individual defendants, without prejudice, because Evans failed to allege sufficient facts to bring claims against them.  *Id.*  Tony Joy is mentioned once in connection with Evans' forced use of the garage door, and Mike Thatcher is not mentioned at all.  **See** Filing No. 11 - Second Amended Complaint p. 7.  The court did not require Evans to amend the complaint.

Nebraska Beef filed the instant motion seeking to strike or dismiss four parts of Evans' Second Amended Complaint.  Nebraska Beef first argues Evans' statements referencing multiple plaintiffs or class members should be stricken, as Evans is not authorized to represent a class.  **See** Filing No. 21 - Motion.  Second, Nebraska Beef argues Evans' statement requesting "additional 10 million dollars for peculiar discrimination he has suffered" because he was forced to leave through a garage door

---

[3] Evans references a separate class action lawsuit *Cortez, et al. v. Nebraska Beef, Inc.*, 8:08CV90, which involved current and former employees paid by Nebraska Beef under the gang time system. **See** Filing No. 11 – Second Amended Complaint p. 5-7.  Evans states he seeks damages in the same amount as received by the *Cortez* plaintiffs in addition to damages for his "peculiar discrimination."  *Id.* at 6.

to go on his breaks is insufficient to support a claim of discrimination.  *Id.*  Third, Nebraska Beef argues Evans' statements referencing RICO are not sufficiently particular to support a claim, nor do they provide a basis for a referral to the Attorney General, and therefore should be stricken.  *Id.*  Finally, Nebraska Beef moves to strike Evans' request he be referred to as "POE-Boy" in this proceeding as scandalous.  *Id.*

## ANALYSIS

The portion of Nebraska Beef's motion related to dismissal of Evans' claims is governed by the Federal Rules of Civil Procedure, Rules 8 and 12(b).  Rule 8 "requires that a complaint present a short and plain statement of the claim showing that the pleader is entitled to relief."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Dismissal under Rule 12(b)(6) is appropriate if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations."  *O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011).  "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Gomes v. American Century Cos., Inc.*, 710 F.3d 811, 815 (8th Cir. 2013) (*quoting* *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  In applying these standards, "a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant."  *U.S. ex rel Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).  The court reviews "the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation."  *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012).

The portion of Nebraska Beef's motion related to striking certain of Evans' allegations is governed by another rule.  The Federal Rules of Civil Procedure provide a mechanism for the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter" under Rule 12(f).  **See** Fed. R. Civ. P. 12(f).  A party

4

may move the court to strike an opposing party's pleading or a portion of the pleading "before responding to the pleading." *Id.* "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). A court possesses liberal discretion when ruling on motions to strike under Rule 12(f). See *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011). "Because such relief is an extreme measure, however, motions under Rule 12(f) are viewed with disfavor in the Eighth Circuit and are infrequently granted." *E.E.O.C. v. Product Fabricators, Inc.*, 873 F. Supp. 2d 1093, 1097 (D. Minn. 2012) (internal quotations omitted). Courts are concerned the motion may only serve to delay proceedings. See *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

Accordingly, a motion to strike is denied if the content sought to be stricken "is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." *Lunford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). "Even matters that are not strictly relevant to the principal claim at issue should not necessarily be stricken, if they provide important context and background to claims asserted or are relevant to some object of the pleader's suit." *Jones v. Dolgencorp, Inc.*, 789 F. Supp. 2d 1090, 1096 (N.D. Iowa 2011) (internal quotations omitted). By contrast, an averment with no basis in law may be stricken. See *United States v. Dico, Inc.*, 266 F.3d 864, 879-80 (8th Cir. 2001) (striking defenses when foreclosed by circuit precedent); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917-18 (8th Cir. 2007) (upholding decision to strike punitive damage prayer where claim forming basis for prayer insufficiently pled under Fed. R. Civ. P. 9); *Jameson v. State Farm Mut. Auto. Ins. Co.*, 871 F. Supp. 2d 862, 874 (W.D. Mo. 2012) (striking when "no apparent connection found" between allegation and claim). Furthermore, allegations will not be stricken as immaterial under this rule "unless it can be shown that no evidence in support of the allegation would be admissible." *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo 1985). "Impertinent allegations are those that are not responsive or relevant to issues involved in the action and which could not be admitted as evidence in the litigation." *Ingram v. Grant Joint Union High Sch. Dist.*, 2010 WL 3245169, at *5 (E.D. Cal. 2010) (**citing** *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527

(9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Generally, motions to strike are granted only when the court is "convinced that there are no questions of fact and that any questions of law are clear and not in dispute, and that under no set of circumstances can the [claim] succeed." *Williamson v. Unifund CCR Partners*, 2009 WL 187702, at *3 (D. Neb. 2009) (**quoting** *Pucket v. United States*, 82 F. Supp. 2d 660, 662-63 (S.D. Tex. 1999)). Finally, a party must usually make a showing of prejudice before a court will grant a motion to strike. **See** *Sobba v. Elmen*, 462 F. Supp. 2d 944, 946 (E.D. Ark. 2006).

The court previously addressed the issues raised by Nebraska Beef's motion in the initial reviews of Evans' complaints. **See** Filing No. 10 - Sept. 6, 2012, Initial Review; Filing No. 12 - Dec. 3, 2012, Initial Review. The court found, as a preliminary matter, Evans sufficiently stated a claim upon which relief could be granted for unpaid wages against Nebraska Beef, but dismissed the remaining claims for failure to state a claim for which relief may be granted. **See** Filing No. 12 - Dec. 3, 2012, Initial Review p. 1-2. Accordingly, the undersigned magistrate judge recommends the court grant Nebraska Beef's motion consistent with the court's prior directives.

The court initially determined, even liberally construing Evans' allegations, the Amended Complaint asserted only a claim for unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., but failed to set forth sufficient facts to support such claim or any other claim for relief. **See** Filing No. 10 - Sept. 6, 2012, Initial Review p. 3. The court allowed Evans to amend the complaint, later determining the Second Amended Complaint sufficiently stated a claim concerning his allegations of unpaid wages. **See** Filing No. 12 - Dec. 3, 2012, Initial Review. Thus, the court found the FLSA claim was the only claim sufficient to proceed. *Id.* Accordingly, although the court did not require Evans to amend the complaint to eliminate unnecessary or surplus statements, no claim based on discrimination or RICO violations survived the initial review process. **See** *id.*; **see also** Filing No. 10 - Sept. 6, 2012, Initial Review. In any event, Evans' statements related to discrimination and RICO violations fail to state independent claims for relief as discussed below.

The court finds Evans fails to plead sufficient facts to state a claim for discrimination. The court's initial review of Evans' Amended Complaint found Evans' statements regarding his forced use of the garage door to be "unrelated and

nonsensical." **See** Filing No. 10 - Sept. 6, 2012, Initial Review p. 3.  Evans has added nothing of substance regarding an allegation of discrimination to his Second Amended Complaint.  **Compare** Filing No. 8 - Amended Complaint p. 6, **with** Filing No. 11 - Second Amended Complaint p. 6-7.  Evans' Second Amended Complaint fails to give any basis for discrimination, i.e., gender, race, or religion.  Additionally, the Second Amended Complaint does not contain facts supporting an inference of discrimination.  In fact, Evans removed an allegation discrimination was based on racial animus from the Amended Complaint when he filed the Second Amended Complaint, which contains no reference to racial discrimination.  **See** Filing No. 8 - Amended Complaint p. 6.  Further, the Second Amended Complaint states Nebraska Beef changed its policy about use of the garage door and there is "no discrimination at security check points."  **See** Filing No. 11 - Second Amended Complaint p. 6-7.  Accordingly, to the extent Evans attempts to allege a claim for discrimination, it is recommended the court dismiss the claim as it fails to rise to a level beyond mere speculation.  Otherwise it is recommended the court strike the statements about using the garage door or other discriminatory conduct, as their inclusion is unfairly prejudicial to Nebraska Beef and not relevant to Evans' claim for unpaid overtime wages.

The court finds Evans' statements regarding a RICO violation, and associated request for a referral to the U.S. Attorney, fail to state a claim for relief.  RICO prohibits any person from benefiting from a pattern of racketeering activity or the collection of unlawful debts or from conspiring to do so.  **See** 18 U.S.C. § 1962.  It appears Evans alleges Nebraska Beef's conduct violates RICO by conspiring to defraud employees of their compensation.  As an initial matter, the RICO statements fail to satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires complaints to contain more specific allegations related to fraud.  At the very least, "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story."  *Summerhill v. Terminex, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).  Moreover, Evans' Second Amended Complaint interposes a RICO statement in a general allegation about unpaid wages, and fails to sufficiently differentiate between the two or account for the statement's inclusion.  **See** Filing No. 11 - Second Amended Complaint p. 2.  Even taken as true, the facts asserted by Evans in his Second Amended Complaint are insufficient to show the existence of a conspiracy.

Evans fails to show any set of circumstances under which a RICO claim could succeed; in any event, the statements are not tantamount to a asserting a claim. It appears however Evans seeks to incite the Attorney General to institute a civil or criminal investigation against Nebraska Beef, rather than institute his own action under RICO. **See** 18 U.S.C. § 1964. If so, the inclusion of the RICO statements are unfairly prejudicial to Nebraska Beef. Therefore, it is recommended the court dismiss any supposed RICO claim, or in the alternative strike Evans' RICO statements and associated request for referral to the U.S. Attorney. **See** [Filing No. 11](#) - Second Amended Complaint p. 2, 4, 14.

Aside from the RICO and discrimination-related statements, the undersigned magistrate judge recommends any class action statements should also be stricken. Although it appears Evans attempted to eliminate references to class members or a class action in his Second Amended Complaint, there remain several references. Evans, a *pro se* litigant, has not demonstrated he is a member of any state bar or admitted to practice law in this court. Accordingly, Evans cannot bring an action on behalf of others. "A litigant may bring his own claims to federal court without counsel, but not the claims of others." [*Tyler v. Term Limit Statute of State of Neb.*, 2008 WL 2129828, at *1 (D. Neb. 2008)](#) (**citing** [*Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)](#)). Evans therefore cannot bring a claim on behalf of a class, and it is recommended all remaining references to "class members" and other plaintiffs be stricken.

Finally, Evans' request the court "permit this action to proceed on behalf of the 'POE-Boy'" should be stricken. It is unclear what, if any, affect Evans believes this terminology has on the bearing of his case, or why he would include it. This phrase occurs nowhere else in this or prior versions of his complaint. The only purpose it could conceivably serve is to prejudice, confuse, and inflame the fact finder. Accordingly, it is recommended the court strike this as immaterial, impertinent, and scandalous.

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that**:

The defendant's Motion to Strike and/or Dismiss ([Filing No. 21](#)) be granted:
- A. Evans' claims based on RICO or discrimination, to the extent they were alleged, should be dismissed.

      B.    Evans' statements referencing "class members" or multiple plaintiffs, discriminatory actions by the defendant, a RICO violation and associated requests for a referral to the U.S. Attorney, and request Evans be referred to as "POE-Boy" should be stricken from the Second Amended Complaint. Evans need not file another amended complaint. The court and parties shall proceed as if the statements were removed from the pleading.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 31st day of July, 2013.

                                                  BY THE COURT:

                                                  s/ Thomas D. Thalken
                                                  United States Magistrate Judge